WILLIAM HILLARD AND ANOTHER V. CONRAD FRANTZ, ADM'R.

The verbal gift of a slave, with immediate delivery, accompanied by the expressed intention and wishes of the donor that the slave should be manumitted, and so accepted by the donee, divested the donor of the property and vested it in the donee, subject only to such equities and conditions as may be lawful.

Appeal from Matagorda. Tried below before Hon. J. H. Bell.

Suit was instituted by appellee against the appellant to recover a negro slave girl alleged to be the property of the appellee's intestate. On the trial it was proved that on the —th of June, 1854, the girl was the property of Fitzgerald, the intestate, and in his possession, and that he died on the 10th June, 1855; that appellee is administrator and that the slave in controversy was worth $700. On the part of the appellant it was proven that on the 17th June, 1854, Fitzgerald gave and delivered the slave girl to the appellant Mrs. Hillard, and that she has had possession of her ever since. Appellant then offered to prove by a witness that on the 17th day of June, 1854, the intestate Fitzgerald gave and delivered the slave to the appellant Caroline Hillard, and never after set up any claim or pretence of title thereto; that said gift was made to the said Caroline Hillard upon the understanding that she would raise the said slave, who was of tender years and the reputed natural daughter of intestate; and that when the child arrived at such an age that she could support herself, that said Caroline Hillard would take said slave to a free State and manumit her, and that the estate of Fitzgerald was solvent. That the delivery of said girl slave was made about the time of Fitzgerald's marriage, and it was agreed by the

parties on the trial, that unless these facts proved and offered to be proven constituted a defence to this suit, that the plaintiff should recover. The Court sustained exceptions to the answers of the appellant and excluded the testimony offered as stated, which is assigned as error.

*Geo. Quinan,* for appellant. The pleas aver in substance that Fitzgerald gave and delivered the slave to Mrs. Hillard, and never after set up any claim to her and divested himself of the property. That Mrs. Hillard undertook to raise her and when able to take care of herself to take her to a free State and emancipate her.

If this agreement on Mrs. Hillard's part was or was not valid, it cannot change her right to the possession of the slave. (Prater, adm'r. v. Darby, 24 Ala. R. 496 ; Gaunt and wife v. Tucker, 18 Ala. R. 31.)

The statement of facts shows that the gift and delivery were proven.

If the agreement of Mrs. Hillard was against public policy the girl cannot enforce it, but Fitzgerald, adm'r., can found no claim upon it, for Fitzgerald was a party to it.

He divested himself wholly of the property. Mrs. Hillard's undertaking was a good consideration.

*Ballinger & Jack,* for appellee. To sustain the judgment of the Court below, it is submitted :

I. There was no valid manumission or agreement therefor set forth in the defendant's pleas.

1st. Because it was not in writing. Considering the legislation of this State in regard to the conveyance of slaves, and the public policy involved in the subject of emancipation. We think whenever the slave is permitted to remain in this State, and the *status* be determinable here, that it should be held of the essence of an act of emancipation that it should be in writing.

Under the Republic, unless the owner sent his slave out of the State, an Act of Congress was necessary to emancipation.

By the present Constitution the Legislature shall have the right to pass laws to permit the owners of slaves to emancipate them, saving the rights of creditors and preventing them from becoming a public charge.

Although the highest and most authentic form of evidence, that of a legislative Act, is not now necessary, yet the present Constitutional requirement evidently looks to a proceeding of more certainty, solemnity and security than any that can rest in mere parol evidence.

We doubt if any slave State in the Union permits a parol emancipation. So far as we have observed there is none. And we think it would open the door to a degree of looseness on this subject most hazardous and injudicious to permit acts of emancipation to be proved by parol "understandings," "declarations" or evidence.

2nd. If writing is not necessary the emancipation must be completely executed. It must be absolute and consummate.

An emancipation is a gift to a slave of the value of a slave. (Prudence v. Bernaodi, La. R. 241 ; Hammond v. Hammond, 2 Bland. 306.)

There can certainly be no reason why the gift of emancipation should not at least be subject to the rules of other gifts of slaves.

In this case the emancipation was both future and conditional. The original and amended plea both state the delivery of the slave to Mrs. H., who was to raise her and when she arrived at an age when she could support herself, she was to be taken to a free State and emancipated.

It was not therefore to take place till she reached a certain age, or, unless after reaching that age, she had such health, faculties, &c., as would enable her to support herself.

In Chevallier v. Wilson and wife, (1 Tex. R. 173,) this Court say : "A parol gift of a chattel (slave) is good only

when it takes place immediately. An estate to commence *in futuro* cannot be made in personal property by parol. The gift must go into immediate and absolute effect."

Citations might be multiplied but cannot be necessary.

3rd. The case of Purvis v. Sherood, (12 Tex. R.) settles that it is necessary to a valid emancipation of a slave in this State that the slave should be sent out of the State and prevented from becoming a public charge. It does not settle what provision shall be held necessary to effect these objects.

But we submit that no emancipation can be valid which does not provide immediately and certainly for the extradition of the slave.

The provision of the Cons. Rep. was that the owner " shall send " his slave without the limits of the Republic, (Gen'l. Prov. Sec. 9,) and the laws contain absolute prohibitions to free negroes remaining in the State.

This certainly implies an immediate and certain removal, not a future indefinite precarious removal. There are two conclusive objections to this, 1st. It is against the policy of the law and against the interests of the State to permit a colored population in our midst, *quasi* free, without the salutory restraints of absolute ownership upon them—a colored class entitled to a prospective freedom. Here was an infant child to be raised up till she became able to support herself. Suppose the person with whom she is placed grows tired of the duty, or dies, what is the condition of the child ? What shall become of her ? Slaves are a class of people whose own interests and happiness require that they should not be thus abandoned. But the effects upon the domestic slave population are even more to be considered. The case of a single small girl will not serve to illustrate these. We must consider the principle involved. If manumission of an infant child to remain in the State until she can support herself be valid, what conditions, what provisions will not be? They may remain here until they acquire a fund to transport them

to Liberia—until they acquire a fund to purchase a house in the Western Reserve in Ohio, &c., &c. And this provision may be made not for one, but for a great number; and suppose a large planter on Caney should manumit a great number of slaves to remain in Matagorda county until they earned a sum for one of these objects, what an example would they afford to the slave population? What influence might they not exert? What contagion might they not spread? Shall there be in our cities, and among our slaves, a class of population in this *quasi* free condition, remaining here to fulfil the period or execute the objects preparatory to removal from the State, which the caprice or benevolence of slaveholders may prescribe.

We do not contend, of course, that a testator, or donor of freedom, shall himself actually transport the slave he intends to set free.

If he makes adequate, ample and certain provision for the purpose, without delay or hazard, it would fulfil the policy of the law. But certainly, it cannot be sufficient when, by his own act, it becomes necessary that the slave should remain for an indefinite and uncertain or even a distant though certain period in the State, in a state of *quasi*, conditional, prospective freedom.

II. The attempted manumission in this case fails wholly to satisfy the requirements of the law, securing the slave from becoming a public charge. What provision is made that Mrs. Hillard will execute the trust? What obligation exists upon her? Suppose she dies, does it descend upon her heirs? Suppose a Sheriff should levy for the debt of Hillard on Mrs. Hillard. Suppose the slave herself reaches an age at which an ordinary person could support herself, but from disease is incapable of doing so. What are Mrs. H.'s rights and her duties?

IV. It was insisted that if the agreement for manumission

was void, then there was a valid gift of the negro girl in abso-
lute property to Mrs. Hillard.

But this was not the legal effect of the transaction.   It was
a mere suggestion, an after-thought of counsel, entirely repug-
nant to the sworn statement of facts on which the new trial
was obtained, and not made out even by the amended pleadings,
put in under the pressure of the trial to avoid the conse-
quences of a demurrer.

The statement in the amended answer, page 17, that Fitz-
gerald, at the time of delivery, divested himself of all property
in said slave, being specially demurred to and being not an
allegation of any facts, but of a legal conclusion without any
notice given of any other or further matters, on which it was
based, will not be regarded.

We are at some loss to know whether the two pleas on this
subject are to be considered as one plea, or separate pleas.
The latter purports to be an amendment, and not a separate
plea ; but whether the one or the other, is not material.   The
first plea alleges a delivery to Mrs. H., with the understanding
that said defendant was to raise said slave and when able to
provide for herself she should be taken to a free State and
manumitted, and in the event that this could not be done, said
slave to be the property of said defendant.   That she agreed
to raise said slave and carry out the wishes in regard to her
aforesaid intestate.   The amended plea alleges a gift and de-
livery to Mrs. H. upon the understanding of the raising and
carrying to a free State.

We think nothing can be more obvious than that there is
no allegation here of the gift of a present or absolute executed
title to this slave to Mrs. H.   The first plea sets up no interest
in her except in the event that when she came of age, &c., she
should be taken to a free State and manumitted.   The plea of
property is future and contingent.   The amended plea does
not pretend any absolute title, but only a gift and delivery for
the purpose of raising the slave and a future manumission.

The terms gave and delivered cannot be received in the technical sense of an absolute gift.

Pleadings are to be taken most strongly against the pleader, and where he openly shifts his position from the mere allegation of putting the girl in Mrs. H.'s possession, and delivering her to Mrs. H. to an averment that he gave and delivered her, but immediately followed with a distinct statement of the object, extent and character of the gift, the Court below properly and necessarily construed the pleas as not of an absolute gift—a gift passing the legal title and ownership of the slave ; but as in fact a delivery of possession for a specific purpose not executed, not consummated—future contingent—precarious and against the policy of the law.

And so as to the statement of facts :

There was not, in fact, any proof at all in the trial ; but when the Court sustained the exceptions to defendant's amended plea, the defendant's counsel gave up the cause and agreed that the Court should enter judgment. In preparing the record for this Court we had some difficulty. Defendant's attorney insisting that he had taken it for granted that the statement of facts would be made equivalent to his pleas.

We have no objection to this.

The change of possession from Fitzgerald to Mrs. H. is unquestionable, and the true question before the Court is, whether such delivery of possession, for the purposes stated in the pleas, amounts to a valid gift of the right of manumission to the slave, or of her absolute title to Mrs. H.

It was for her manumission Mrs. H. agreed and undertook to carry out the wishes of F. : raise the slave and send her to a free State, &c.

And the manumission being ineffectual and invalid, and against the policy of the laws, the pretended gift to her, admitting it to have been immediate and absolute, was void.

This has been settled in a series of well considered cases in

North Carolina.    (See 2 Wendell's Dig. "Slaves," No. 41 and references.)

Any gift or conveyance, having for its object to place a slave in a qualified state of slavery, or *quasi* freedom, during a term of years, to remain in this State, cannot be sustained. The law must be upheld.   The imperative policy of the State cannot be left dependent upon the conscience of persons who may be selected to retain slaves during a series of years, or for an indefinite time, under a species of protection or guardianship, to "raise" them up, to teach them trades, or arts, &c., leaving their removal from the State prospective, precarious and indefinite.

" The nature of the relation of master and slave admits of no modification ; nor will Courts, either of law or equity, lend aid to the attempt, if indulged, to engraft upon it new or incongruous features."

" A slave cannot become partially free.   The law recognizes only freedom on the one side and slavery on the other, and there is no intermediate *status*." (1 Parsons on Contracts, 327 ; Wynn v. Carrell, 2 Grot. 227 ; Buckert, adm'r, v. Gilbert, 3 Leigh. 8.)


ROBERTS, J.   The facts contained in the plea and evidence rejected show that Fitzgerald made a gift of the slave to Mrs. Hillard, burdened with a trust, under which she accepted it ; and delivered possession of the slave to Mrs. Hillard, who remained in possession, in pursuance thereof, nearly two years before this suit was brought.   Such a transfer of a slave may be made verbally, when possession is immediately given, particularly as between the parties to the gift, or their privies. (Chevalier, adm'r, v. Wilson and wife, 1 Tex. R. 161.)

Such a trust is not unlawful in this State.   (Purvis v. Sherrod, 12 Tex. R. 140 to 172.)

The facts of the case last quoted are very similar to those

of this case, except that in that case there was a will made, in this a verbal gift with immediate delivery of the slave.

Whether the slave shall have the right to claim that she has been manumitted is really not the question to be decided ; but whether the act of delivery, accompanied with his expressed intentions and wishes in doing the act, divested himself of the property and vested it in Mrs. Hillard, subject only to such equities and conditions as may be lawful.  (Gaunt and wife v. Tucker's Ex'rs, 18 Ala. R. 31.)

We think it did, and therefore the judgment of the Court below is reversed and the cause remanded.

Reversed and remanded.